EMIL STEIN AND JULIA STEIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BERTHA ZUCKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM B. STEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JACOB STEIN AND FRANCES STEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 104553, 104554, 104555, 104556.   Promulgated January 21, 1942.

*John A. Conlin, C. P. A.*, for the petitioners.
*Albert H. Monacelli, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for 1934 as follows:

| Petitioner | Docket No. | Deficiency |
| --- | --- | --- |
| Emil Stein and Julia Stein | 104553 | $677.18 |
| Bertha Zucker | 104554 | 389.89 |
| William B. Stein | 104555 | 104.47 |
| Jacob Stein and Frances Stein | 104556 | 104.84 |

The sole question presented in each proceeding is whether certain distributions received by the petitioners in 1934 from the Elizabeth Amusement Co., a New Jersey corporation, of which the petitioners were stockholders, constituted taxable dividends.

Petitioners' returns for 1934 were filed with the collector of internal revenue at Newark, New Jersey.

The proceedings were submitted on a written stipulation of facts filed at the hearing, which we adopt as our findings of fact.

During 1933 and 1934 the petitioners were the majority stockholders of the Elizabeth Amusement Co., a New Jersey corporation

organized in 1920, which was from 1924 through 1934 the lessor of the Motion Picture Theatre.

The authorized capital stock of the Elizabeth Amusement Co., hereinafter sometimes referred to as the corporation, consisted originally of 10,000 common shares of a par value of $100 each, of which 2,400 shares were outstanding as of June 30, 1933.

At January 1, 1933, the corporation had a deficit of $70,971.52, which resulted from distributions having been made to its stockholders in excess of earnings during the years 1928 to 1932, inclusive, as follows:

| Year | Book earnings | Dividends paid which were considered 100% taxable by the stockholders | Excess amounts taxed to stockholders |
|---|---|---|---|
| Surplus Jan. 1, 1928 | $6,246.54 | | $15,005.37 |
| 1928 | 45,948.09 | $67,200 | 20,770.69 |
| 1929 | 46,429.31 | 67,200 | 21,255.53 |
| 1930 | 45,944.47 | 67,200 | 15,729.54 |
| 1931 | 53,473.46 | 69,200 | 1,001.33 |
| 1932 | 51,798.67 | 52,800 | |
| Total | | | 73,759.46 |
| Less surplus adjustments 1929 and 1932 | | | 2,787.94 |
| Deficit Jan. 1, 1933 | | | 70,971.52 |

On July 28, 1933, the certificate of incorporation of the Elizabeth Amusement Co. was amended to provide for the changing of the authorized capital stock from 10,000 shares of $100 par value to 5,000 shares of no par value.

On July 28, 1933, the corporation's board of directors passed the following resolution:

Mr. William B. Stein thereupon moved that immediately upon the completion of legal formalities changing and amending the certificate of incorporation in the mode and manner aforesaid, that the present outstanding stock of the corporation be called in for exchange and surrender, and in lieu of each one-eighth interest now outstanding there be issued two hundred (200) shares of no par value stock and that as an added consideration for the surrender of the present outstanding stock by each of the stockholders and his acceptance of the new stock, that there be created for the benefit of the present stockholders of record, a provisional interest in a note to be executed by this Corporation to William B. Stein and Emil Zucker, as Trustees, which note is to be in the sum of Eighty Thousand ($80,000.) Dollars, and to run for Twenty (20) months, and is to be amortized in the sum of Four Thousand ($4,000.) Dollars per month, said amortization payments to be distributed by the Trustees, as, when and if received, to each of the present stockholders, in the proportion which their present holdings bear to the entire capital stock issued and outstanding, it being further understood, however, that default in the payment of said amortization payments, or in the payment of the entire note, shall not be charged against the Elizabeth Amusement Company and no suit thereon be brought, unless and until the Trustees shall have received a written demand in that

behalf executed by two-thirds of the holders in interest of the beneficial proceeds of said note at the time of said default.

On July 28, 1933, the corporation recapitalized and canceled its par capital stock, consisting of 2,400 shares, par value $100 per share, by issuing 1,600 common shares of no value stock and also issuing its note for $80,000 payable at the rate of $4,000 per month. Those payments in liquidation of note indebtedness were made out of earnings for the year in which paid to the trustees and distributed to the stockholders. The value per share of the new stock was stated on the corporation's books to be the same as the old stock, namely, $100 per share. Before the recapitalization the total stock account as shown by the books was $240,000; thereafter, $160,000, a reduction of $80,000. The purpose of the recapitalization was to ultimately eliminate the book deficit caused by distributions in excess of earnings in prior years.

The corporation created upon its books of account in 1933 an account headed "Note Payable" and stated liability thereunder $80,000.

Petitioners in 1933 surrendered to the corporation their par shares of capital stock in the corporation, which had cost them par, and received in lieu thereof their proportionate shares in 1,600 shares of no par stock plus their proportionate beneficial interest in a note of $80,000 issued by the corporation to William B. Stein and Emil Zucker as trustees.

Pursuant to the resolution of the corporation's board of directors on July 28, 1933, a trust indenture dated August 7, 1933, was executed, under the terms of which the corporation agreed to pay to the trustees the $80,000 note referred to in the resolution in accordance with the terms thereof.

The records of the corporation reflect a deficit as of January 1, 1934, of $48,556.18, and as of December 31, 1934, of $58.10, shown as follows:

| | |
|---|---:|
| Book deficit January 1, 1933 | $70,971.52 |
| Less Surplus adjustments of prior years | 1,800.33 |
| | 69,171.19 |
| 1933 book earnings | 44,615.01 |
| | 24,556.18 |
| Dividends paid 1933 | 24,000.00 |
| Book deficit January 1, 1934 | 48,556.18 |
| Surplus adjustment of prior years | 382.52 |
| | 48,938.70 |
| 1934 book earnings | 48,880.60 |
| Book deficit December 31, 1934 | 58.10 |

The following schedule indicates payments made by the corporation from July 1, 1933, until December 31, 1936:

| Year | Book earnings | Payments made on note payable | Distributions held to represent ordinary dividends |
|---|---|---|---|
| 1933 | $44,615.01 | $24,000 | $24,000 |
| 1934 | 48,880.60 | 44,500 | none |
| 1935 | 49,897.15 | 11,500 | 40,000 |
| 1936 | 56,202.67 | none | 56,000 |
| Total | 199,595.43 | 80,000 | 120,000 |

It has been the practice of the corporation for a number of years before the taxable year to distribute rentals collected by it without declaring formal dividends. The corporation did not in 1934 declare dividends to its stockholders.

Petitioners in 1934 received the following amounts as their shares of payments made on the $80,000 note:

Julia Stein _____ $12,000
Bertha Zucker _____ 6,000
William B. Stein _____ 6,000
Jacob Stein _____ 6,000

These amounts the corporation charged in its books of account against "Note Payable" and they are included in the totals stated above as having been paid in the year 1934 on the note.

During the period from July 29, 1933, to March 5, 1935, when payments were made upon the $80,000 note, no other distributions were made by the corporation. On March 14, 1935, a resolution was passed by the corporation's board of directors directing that dividends of $30 per annum be resumed upon each of the 1,600 shares outstanding, the payments to be made monthly.

The distributions in payment of the $80,000 note were made in direct proportion to the stockholdings of the several stockholders.

In their income tax returns for 1934 the petitioners did not report as taxable income the amounts received by them from the corporation in part payment of the note. In the determination of the deficiencies the respondent has included in the petitioners' gross incomes such payments received by the petitioners. In each of the deficiency notices attached to the several petitions the respondent says: "The distributions received by you from the Elizabeth Amusement Company are held to constitute ordinary taxable dividends."

The petitioners submit that the amounts received by them from the corporation in 1934 "did not constitute in 1934 taxazle dividend[s] to these petitioners."

The respondent submits that the amounts received by the petitioners from the corporation in 1934 are taxable either under section 115 (a) of the Revenue Act of 1934 as taxable dividends, or under section 115 (g) of the same act as being amounts "essentially equivalent to the distribution of a taxable dividend."

The applicable provisions of the Revenue Act of 1934 are as follows:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (4) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

\* \* \* \* \* \* \*

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property.

\* \* \* \* \* \* \*

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

In support of their contentions that the amounts received by them in 1934 from the corporation do not constitute taxable income, the petitioners cite *Louise Glassell Shorb*, 22 B. T. A. 644; *Arthur C. Stifel*, 29 B. T. A. 1145; *Elton Hoyt, 2nd*, 34 B. T. A. 1011; *Loren D. Sale*, 35 B. T. A. 938; and *Roy J. Kinnear*, 36 B. T. A. 153. Those cases merely stand for the proposition that in computing the amount of earnings accumulated by a corporation subsequent to March 1, 1933, for the purpose of determining whether a taxable distribution had been made by a corporation, operating losses and dividends paid must be deducted from the gross earnings in determining whether there are any available earnings in the corporation's treasury for payment of a dividend. The cases are obviously inapposite in these proceedings. The record here does not show that the corporation, Elizabeth Amusement Co., had any operating losses for any year. The facts are simply that the corporation in years prior to 1934 had distributed to its stockholders more than the earnings available for distribution. To the extent that those distributions were in excess of earnings available for the making of the distributions there was an invasion of cap-

ital. The excess distributions in prior years did not constitute taxable income of the recipients. *Crystal Ice Co.*, 14 B. T. A. 682; *J. L. Washburn*, 16 B. T. A. 1091; *Roy J. Kinnear, supra.* The stipulated facts are that these distributions out of capital received in years prior to 1934 were returned as taxable income of the petitioners. We think it plain that it is immaterial in these proceedings that they were so returned. Petitioners can not for 1934 obtain a benefit for the erroneous inclusion in taxable income of prior years of amounts which in point of fact were not taxable income of the years in which received. Apparently the principal purpose of the recapitalization effected by the corporation in 1933 was to correct the erroneous report made by the stockholders of these distributions in prior years. Such purpose can have no material bearing upon the issue which is before us.

The question for decision is whether petitioners derived taxable income from the receipt in 1934 of payments made by the corporation upon its note pursuant to the indenture of trust of August 7, 1933. There is no evidence that the petitioners reported as taxable income of 1933 the value of their interest in the $80,000 note. They received no distribution from the corporation in 1933 and if they were on the cash basis they clearly were not required to include in their taxable incomes any value for their interests in the note.

We do not think that it is material whether the distributions received by the petitioners in 1934 were considered by the taxpayers as taxable dividends or not. In any event, they received the distributions in 1934 and we think they constituted taxable income of that year.

But we do not think that the respondent erred in treating the distributions of 1934 as taxable dividends. The stipulated facts are that the corporation had earnings in 1934 of $48,880.60 and the payments made on the note were in the amount of $44,500. Since under the statute distributions made by a corporation are to be regarded as paid out of the most recently accumulated earnings, it must be held that the payments on the note were out of the earnings of 1934. Cf. *Helvering* v. *Canfield*, 291 U. S. 163.

In *H. Y. McCord*, 31 B. T. A. 342, the Board held that a distribution made by a corporation in 1929 of an amount not in excess of surplus accumulated after February 28, 1913, is taxable to the shareholders as an ordinary dividend, notwithstanding it occurs at the same time as an exchange of shares as a part of recapitalization. See also *Mabel I. Wilcox*, 43 B. T. A. 931.

Furthermore, it is not material that there was no formal declaration of the dividend made by the corporation in 1934. A declaration of a dividend is not essential to a taxable dividend distribution. *Hadley* v. *Commissioner*, 36 Fed. (2d) 543; *Helen Sperry Lea*, 35 B. T. A. 243.

Even if the distribution made by the corporation does not fall under section 115 (a) of the Revenue Act of 1934, we think that it must be held a taxable distribution under section 115 (g) of that act, for the distributions were essentially equivalent to the distribution of a taxable dividend. See *W. & K. Holding Corporation*, 38 B. T. A. 830; *Annie Watts Hill*, 27 B. T. A. 73; affd., 66 Fed. (2d) 45; *James D. Robinson*, 27 B. T. A. 1018; affd. (C. C. A., 6th Cir.), 69 Fed. (2d) 972; *J. Natwick*, 36 B. T. A. 866. It is not material that there was no "artifice, subterfuge, or bad faith" on the part of the corporation or its stockholders. *McGuire* v. *Commissioner* (C. C. A., 7th Cir.), 84 Fed. (2d) 431. The important factor is the result. *Smith* v. *United States* (C. C. A., 3d Cir.), 121 Fed. (2d) 692; *George Hyman*, 28 B. T. A. 1231; affd., 71 Fed. (2d) 342; certiorari denied, 293 U. S. 570. In *Smith* v. *United States, supra,* the court said:

* * * However, it is our opinion that the bona fides in a company's capitalization of its earnings is immaterial to the applicability of Section 115 (g). * * * The statute is aimed at the result. [Citations]. The basic criterion for the application of Section 115 (g) is "the net effect of the distribution rather than the motives and plans of the taxpayer or his corporation." *Flanagan* v. *Helvering*, 116 F. (2d) 937, 939–940, (Ct. of App., D. C.) * * *.

The respondent's determination that the distributions received by the petitioners in 1934 from the Elizabeth Amusement Co. constituted taxable dividends is approved.

*Decisions will be entered for the respondent.*